1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EMAD E. AHMED                              )
                                           )
                    Plaintiff,             )        CASE NO. C06-191 JCC-MJB
                                           )
            v.                             )        REPORT AND
                                           )        RECOMMENDATION
JO ANNE B. BARNHART,                       )
Commissioner of Social Security,           )
                                           )
                    Defendant.             )
_____)

Plaintiff Emad E. Ahmed appeals to the District Court from a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act.  For the reasons set forth below, it is recommended that the Commissioner's decision be REVERSED and this matter REMANDED for payment of benefits.

I.  PROCEDURAL HISTORY

Plaintiff applied for Disability Insurance Benefits ("DIB") on April 11, 2001, alleging disability since December 30, 1997, and identifying his impairment as diabetes and sequelae thereof.  Tr. 166-171, 186.  The Social Security Administration denied Plaintiff's application initially (Tr. 127-130) and upon reconsideration.  Tr. 131-136.  A hearing was held before Administrative Law Judge ("ALJ") R. J. Payne, on August 14, 2002.  Tr. 70-124.  Testimony was taken from Plaintiff, who was represented by counsel,  a medical expert, Arthur Craig,

1   M.D., and a vocational expert, Tom Moreland.  Tr. 54.

2          The ALJ issued an unfavorable decision on October 3, 2002.  Tr. 51.  On August 28,

3   2003, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the

4   final decision of the Commissioner.  Tr. 5-6.  Subsequently, Plaintiff filed a Complaint with this

5   Court.  On June 8, 2004, the Honorable Thomas S. Zilly adopted the Report and

6   Recommendation of the Honorable Mary Alice Theiler, remanding the matter for further

7   administrative proceedings.  Tr. 393-407.

8          On August 16, 2004, the Appeals Council remanded back to the ALJ, who held a

9   supplemental hearing on April 13, 2005.  Tr. 429-462.  Testimony was taken from Plaintiff, who

10  was represented by counsel, and a medical expert, Robert A. Stier, M.D.  Tr. 429-462.  The

11  ALJ issued a second unfavorable decision on April 22, 2005.  Tr. 362-372.  On December 14,

12  2005, the Appeals Council declined jurisdiction.  Tr. 348-350.  On February 27, 2006, Plaintiff

13  timely filed his appeal with this Court.

14                              II.  THE PARTIES' POSITIONS

15         Plaintiff requests that the Court reverse the ALJ's decision and remand for payment of

16  benefits.  Plaintiff argues that the ALJ erred by: (1) denying disability based on Plaintiff's refusal

17  to comply with prescribed treatments without citing supporting substantial evidence,  and (2)

18  failing to adequately consider evidence of Plaintiff's symptoms of blurred vision and fatigue

19  existing before the last insured date.  Dkt # 14.  Defendant argues that the Commissioner's

20  decision should be affirmed because it is supported by substantial evidence and is free of legal

21  error.  Dkt. # 18.

22                              III.  STANDARD OF REVIEW

23         The Court may set aside the Commissioner's denial of social security disability benefits

24  when the ALJ's findings are based on legal error or not supported by substantial evidence in the

25

26  REPORT AND RECOMMENDATION
    PAGE - 2

record as a whole. *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence is defined as more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Where the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion which must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

## IV.  EVALUATING DISABILITY

Plaintiff bears the burden of proving that he is disabled. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423 (d)(1)(A).

The Social Security regulations set out a five-step sequential evaluation process for determining whether Plaintiff is disabled within the meaning of the Social Security Act. *See* 20 C.F.R. § 416.920. At step one, Plaintiff must establish that he or she is not engaging in any substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, Plaintiff must establish that he or she has one or more medically severe impairments or combination of impairments. If Plaintiff does not have a "severe" impairment, he or she is not disabled. *Id.* at § (c). At step three, the Commissioner will determine whether Plaintiff's impairment meets or equals any of the listed impairments described in the regulations. A Plaintiff who meets one of the listings is disabled. *See Id.* at § (d).

At step four, if Plaintiff's impairment neither meets nor equals one of the impairments

REPORT AND RECOMMENDATION
PAGE - 3

1   listed in the regulations, the Commissioner evaluates Plaintiff's residual functional capacity

2   ("RFC") and the physical and mental demands of Plaintiff's past relevant work. *Id.* at § (e). If

3   Plaintiff is not able to perform his or her past relevant work, the burden shifts to the

4   Commissioner at step five to show that Plaintiff can perform some other work that exists in

5   significant numbers in the national economy, taking into consideration Plaintiff's RFC, age,

6   education, and work experience. *Id.* at § (f); *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir.

7   1999). If the Commissioner finds Plaintiff is unable to perform other work, then Plaintiff is

8   found disabled.

9                          V.  SUMMARY OF THE RECORD EVIDENCE

10         Plaintiff was 48 years old at the time of the first hearing before the ALJ. Tr. 70-124.

11   Plaintiff has a bachelor's degree in economics and a doctorate in political science from the

12   University of Cairo. Tr. 88. He has significant experience as a consultant, which preceded

13   limited experience as a trainee/manager in the fast food industry and as a prison chaplain. Tr.

14   89-92.

15         In 1995, Plaintiff reported fainting while working at Denny's, which caused him to leave

16   his job. While working at Burger King (1996, one month) and Taco Bell (1997, three months),

17   Plaintiff reported that he could not perform his work because of visual impairment, slowness,

18   and an inability to stand on his feet. Tr. 93. Despite this, Plaintiff reported that he actively

19   sought employment during the period of 1996-1998. Plaintiff now alleges disability due to

20   diabetes and sequelae thereof, namely diabetic peripheral neuropathy and impaired visual acuity.

21   Tr. 186. Other evidence relevant to Plaintiff's claims is incorporated into the discussion below.

22                             VI.  THE ALJ'S DECISION

23         The ALJ concluded that Plaintiff met the non-disability requirements for the period in

24   question, that he has not engaged in substantial gainful employment since the onset of the

25

26   REPORT AND RECOMMENDATION
     PAGE - 4

1    alleged condition and that he has an impairment or combination of impairments considered

2    severe, but that such impairments do not meet or medically equal one of the listed impairments

3    in Appendix l, Subpart P, Regulation No. 4.  Tr. 371.  Specifically, the ALJ concluded that the

4    medical evidence does not show that Plaintiff's diabetes caused him to be unable to work during

5    the period in question.  Tr. 368-71.  In reaching his decision, the ALJ concluded that recent

6    opinions from Plaintiff's treating physician, Gregory Vaughan, M.D., of Puget Sound Group

7    Health Cooperative ("Group Health"), were properly considered and rejected as inconsistent

8    with treatment records from the relevant period.  Tr. 369.  The ALJ also concluded that

9    Plaintiff's allegations of feeling faint, fatigue, blurred vision, and neuropathy were due in part, to

10   noncompliance with treatment protocols.  Tr 364.

11   Additionally, the ALJ concluded that the Plaintiff retained at least a sedentary level RFC

12   prior to March 1998 and was able to perform substantially all the full range of work thereof,

13   including the ability to perform his past work as a financial consultant or any of a significant

14   number of jobs in the State and national economies despite his limitations.  Tr. 371.

VII.  DISCUSSION

A.    PHYSICIANS' OPINIONS

17   Plaintiff argues that the ALJ improperly rejected the opinion of his treating physician,

18   Dr. Gregory Vaughan.  Dkt. # 14.  Defendants argue that recent statements by Dr. Vaughan

19   were adequately considered and rejected as more limited than and contradictory to his prior

20   opinions regarding Plaintiff's health.  Dkt. # 18 (*citing* Tr. 369).

21   (1) Treating Physician's Opinion

22   The Commissioner must provide "clear and convincing reasons" for rejecting the

23   uncontradicted opinion of an examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

24   1996) *(citing Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1999)).  The opinion of an

REPORT AND RECOMMENDATION
PAGE - 5

1    examining doctor, even if contradicted by another doctor, can only be rejected for specific and

2    legitimate reasons that are supported by substantial evidence in the record. *Lester*, 81 F.3d at

3    830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)).

4          Plaintiff, citing the treatment record and recent statements by Dr. Vaughan, argues that

5    during the period in question, he was totally disabled for work, including sedentary employment

6    because of his diabetes and sequelae thereof, namely diabetic peripheral neuropathy and

7    impaired visual acuity.  Dkt. # 14.

8          Defendants, citing *Weetman v. Sullivan*, 877 F.2d 20 (9th Cir. 1989), argue that because

9    Dr. Vaughan's recent opinions were solicited after the Plaintiff was found not disabled, such

10    opinions are not persuasive, particularly when the opinions are inconsistent with earlier

11    statements.  Dkt. # 18.  Therefore, Defendants maintain that the ALJ adequately considered the

12    treatment records and post-remand statements of Dr. Vaughan, and provided sufficient reasons

13    to discredit the opinions as more expansive and contradictory to Plaintiff's treatment records.

14    Tr. 369.

15          Dr. Vaughan's treatment records indicate that the Plaintiff was unable to work because

16    he needed constant supervision to prevent fainting and adverse insulin reactions due to his

17    diabetic condition.  Tr. 239 (*citing* 267, 241, 268).  In 2004, after the case was remanded, Dr.

18    Vaughan submitted letters stating: Plaintiff was totally disabled for work, including sedentary

19    employment; had Plaintiff maintained perfect compliance and excellent blood sugar, it is unlikely

20    to have reversed his diabetic foot neuropathy; and Plaintiff's failure to achieve blood sugar

21    control is not due to a lack of conscientious effort, but because of "difficult social situations"

22    which prevent him from seeing the same physician on a consistent basis.  Tr. 352, 425.

23          Plaintiff also cites the diagnosis of Richard L. Rapport, M.D., a neurosurgeon with

24    Group Health.  Tr. 240-41.  In the assessment Dr. Rapport submitted to the Department of

25

26    REPORT AND RECOMMENDATION
     PAGE - 6

1   Social and Health Sciences, he diagnosed Plaintiff with diabetic peripheral neuropathy, with

2   severe impairment, including the inability to perform one or more basic work-related activities,

3   lift two pounds, or stand and/or walk. *Id.* Dr. Rapport *estimated* partial recovery in three to

4   four weeks and a release for work by February 15, 1998. *Id.*

5         The ALJ notes that in October 1997, Dr. Vaughan completed a medical clearance form

6   in which he opined that Plaintiff was unable to work "at this time," without stating that Plaintiff

7   would be unable to work in the future. Tr. 364 (*citing* Tr. 268). Additionally, in November

8   1997, Dr. Vaughan opined that the Plaintiff was severely limited for a period lasting "only three

9   to four weeks up to two months." Tr. 369 (*citing* Tr. 239). Likewise, in January 1998, Dr.

10   Vaughan opined that the Plaintiff would be severely limited for three-four weeks. Tr. 365 *citing*

11   241. The ALJ contrasted said opinions with those made by Dr. Vaughan more recently, stating:

12        "However, the undersigned (ALJ) rejects this later opinion (referring to the 2004
       letters), as an opinion made at the time would have greater relevance than an opinion

13        made 6 years later. As Dr. Vaughan opined to significant restrictions lasting up to two
       months *only*, the undersigned finds that the medical expert's opinion, as based on the

14        longitudinal record, is more in keeping with the claimant's actual abilities during the
       relevant period." Tr. 369 (*citing* Tr. 425).

15         First, in his 1998 letter, to which the ALJ refers, Dr. Vaughan stated that the "duration

16   of his (Plaintiff's) medical treatment for his condition *might* take two months *or more* for full

17   recuperation at the present time." Tr. 239. Dr. Vaughan never used the word *only* or anything

18   from which one could reasonable imply a finite period of disability. *Id.* Vaughan's opinion is

19   based on an assessment by Dr. Richard Rapport. Tr. 240, 41. Dr. Rapport was asked to

20   *estimate* whether the prescribed treatments were likely to restore the Plaintiff's abilities and

21   when he *could* be released to work. Tr. 241. A physician's estimated progress for his patient,

22   which may run opposite to the actual course of the illness, does not amount to a contradiction in

23   opinion, but rather, reflects the indeterminate nature of disease.

24        Furthermore, Defendants' selection of Dr. Vaughan's statements is incomplete, in light

25

26   REPORT AND RECOMMENDATION
    PAGE - 7

of the treatment record.  The statement "unable to work at this time" as cited by Defendants in reference to a medical clearance form (Tr. 268), implies the ability to work pending outcome of the condition, namely controlling his diabetes and sequelae thereof.  Unlike the Defendants' characterization, the statement is a flexible and non-determinative medical opinion about the likelihood of Plaintiff's ability to return to work.

Second, Defendants cite *Weetman*, wherein the ALJ clearly stated that none of the medical notes made at the doctors' visits, provided objective medical evidence that her impairment was as serious as her testimony indicated.  *Weetman v. Sullivan*, 877 F.2d 20, 23 (9th Cir. 1989).  By contrast, in the present case, Plaintiff's testimony is supported by substantial treatment records.  Plaintiff was diagnosed with diabetes mellitus in October 1995.  Tr. 242.  Between June 4, 1996 and January 5, 1998, Plaintiff had approximately thirteen consultations with Dr. Vaughan and Group Health staff.  Tr. 242-268.  During such time, Plaintiff was seen for an inadequately controlled diabetic condition as well as related and unrelated symptoms thereof, including: thrush, sporadic loss of consciousness/syncope, lack of sleep, dizziness, blurred or double vision, chest pain/costochondritis, sciatica, foot/leg/back pain, and major stress.  *Id.*  Because of his worsening condition, Plaintiff's medication dosages were consistently increased and/or substituted, including insulin treatment protocols for what began as a non-insulin dependent diabetic condition.  *Id.*  Consequently, Dr. Vaughan's more recent statements, which characterize the Plaintiff's condition as uncontrolled, progressive, and totally disabling, are clearly consistent with the medical record.

The Court finds that there are no clear and convincing reasons for rejecting Dr. Vaughan's opinion on the ultimate issue of disability.  Substantial evidence supports the Plaintiff's claim that he was totally disabled for work, including sedentary employment because of his diabetes and sequelae thereof, which conflicts with the ALJ's determination that Dr.

REPORT AND RECOMMENDATION
PAGE - 8

1    Vaughan's latter statements were more expansive and contradictory to treatment records.

2        (2) Nontreating State Agency Physician's Opinion

3        Plaintiff argues that nontreating medical experts are in an inferior position to know and

4    observe the Plaintiff during the period in question. Dkt. #14.  Consequently, the ALJ should

5    have credited Dr. Vaughan, who determined that the Plaintiff was disabled prior to the date of

6    last insured. *Id*.  Defendants argue that the ALJ correctly rejected Dr. Vaughan's post-remand

7    statements because they contradicted the evidence created at the time the Plaintiff was insured.

8    Dkt. # 18.  Defendants state that the ALJ properly relied on the opinions of Drs. Craig and

9    Stier's, and properly concluded that the Plaintiff was not disabled prior to March 1998. *Id.*

10        Social Security Ruling 96-6p provides that an ALJ cannot ignore the opinions of State

11    agency physicians, and must explain the weight given to these opinions in their decisions. The

12    opinions of State agency consultants can be given weight *only* insofar as they are supported by

13    evidence in the case record, including any evidence received at the ALJ level that was not before

14    the State agency. SSR 96-6p

15        On February 29, 2002, Arthur B. Craig, M.D., a medical expert in internal medicine

16    submitted an opinion regarding the Plaintiff's RFC during the relevant period, which the ALJ

17    adopted. Tr. 342-44, 440.  Dr. Craig testified that even with the Plaintiff's poor compliance

18    with his diabetes treatment, he retained the ability to perform sedentary work.  Tr. 77, 342-44.

19    Dr. Craig dismissed the Plaintiff's neuropathy, stating that there was insufficient medical

20    evidence documenting problems that affected the Plaintiff's hands and feet during the relevant

21    period.  Tr. 81. Dr. Craig also stated that the Plaintiff did not begin to have numbness in his

22    feet until the summer of 1998.  Tr. 76.

23        At the supplemental hearing, Robert A. Stier M.D., a medical expert in internal medicine

24    and allergy (Tr. 416), agreed with Dr. Craig.  Dkt. #18, Tr. 438-39.  Dr. Stier testified that

25

26    REPORT AND RECOMMENDATION
     PAGE - 9

1   neurological exams during the relevant period did not demonstrate symptoms in the context of

2   motor problems and neuropathy.  *Id.*  Dr. Stier opined about the Plaintiff's neuropathy during

3   the relevant period, stating:

4       "...cumulatively over this period of time, he's (Plaintiff) developed symptoms of – which
        is (sic) pretty typical of diabetes with peripheral neuropathy.

5
        It is said that these days with diabetics surviving for long periods of time, both Type I
6       and Type II, that a good fifty percent of them develop neuropathy of one form or
        another.

7
        Over this duration of time, I think that it's pretty logical that he would develop
8       sympathetic or sympathetic (sic), para-sympathetic nervous system neuropathy as well.

9       And I think that the faintness that he had had (sic) probably was on the basis of poor
        sympathetic response to postural changes and so forth.

10
        I think that's a logical conclusion.
11
        But, that was an occasional complaint, it wasn't an ongoing frequent type of thing.
12
        Not to mis (*sic*) – to meet the requirements, say of hyperglycemic episodes occurring I
13      think its every three months or something like that or three times a year."  Tr. 440

14  Drs. Craig and Stier stated that they could not find any evidence that the Plaintiff had significant

15  physical impairment due to neuropathy.  Tr. 81, 441.

16          The Court however, finds that such opinions are inconsistent with the diagnoses of the

17  treatment record.  The treatment record provides ample evidence that the Plaintiff suffered

18  significant physical impairments due to his neuropathy.  In October 1997, Plaintiff was

19  diagnosed with de Quervain's tendinitis, after experiencing pain in his left hand which lasted

20  four weeks.  Tr. 252.  From October 1997 through December 1997, Plaintiff was diagnosed

21  with near syncope/syncope, after experiencing dizziness and three near-fainting episodes.  Tr.

22  255-57, 261, 239.  From December 1997 through January 1998, Plaintiff was diagnosed with

23  sciatica, after experiencing severe pain in his right leg.  Tr. 264, 267.

24          Furthermore, Dr. Richard Rapport, an expert in neuroscience, completed physical

25

26  REPORT AND RECOMMENDATION
    PAGE - 10

1    examination of the Plaintiff during the relevant period and diagnosed the Plaintiff with diabetic

2    peripheral neuropathy.  Tr. 240-41.  Dr. Rapport stated that Plaintiff was experiencing severe

3    back and leg pain, which severely limited his residual ability to work, he could not bend or sit,

4    and he would require his wife to care for his children.  *Id.*

5            As Defendants argue, the ALJ may rely on testimony from non-examining medical

6    expert when experts' opinions are consistent with other evidence in the record.  However,

7    consistency between two medical experts' opinions and contrary to the evidentiary record, is

8    not the type of logical coherence sought.  Accordingly, the ALJ improperly weighed and

9    excluded testimony of the Plaintiff's treating physicians during the relevant period.  The ALJ,

10   lacking sufficient evidentiary support in the record, improperly relied experts' opinions, which

11   led to the improper conclusion that the Plaintiff was not disabled prior to March 31, 1998.

12   B.    RFC Assessment

13           Plaintiff argues that had the ALJ properly considered medical evidence in the record, he

14   would have concluded that the Plaintiff lacked the RFC to perform the requirements of his past

15   or other work.  *Id.*  Defendants argue that the ALJ properly rejected treating physicians'

16   opinions for lack of consistency, and properly considered evidence in the record so as to arrive

17   at the correct RFC value.  Dkt. #18.  Furthermore, Defendants maintain that Plaintiff is able to

18   perform his past or other relevant work.  *Id.*

19           A plaintiff's RFC is based on what he can still do despite his limitations.  *See* 20 C.F.R.

20   § 416.945(a) (2001).  At the hearing level, the ALJ evaluates a Plaintiff's RFC at step four of

21   the sequential evaluation process by considering all of the evidence, including any physical and

22   mental limitations.  *See* 20 C.F.R. § 416.945(a)(b)(c), 416.946, and SSR 96-8p.  SSR 96-8p

23   provides that "[t]he RFC assessment considers only functional limitations and restrictions that

24   result from an individual's medically determinable impairment or combination of impairments,

25

26   REPORT AND RECOMMENDATION
     PAGE - 11

1   including the impact of any related symptoms."  The ALJ is free to accept or reject restrictions

2   that the Plaintiff alleges provided his findings are supported by substantial evidence.

3   *Magallanes*, 881 F.2d at 756-57.

4          The Social Security Regulations require that the ALJ undertake a "function-by-function"

5   analysis of the Plaintiff's capacity to work according to exertional categories:

6          The RFC assessment must first identify the individual's functional limitations or
       restrictions and assess his or her work-related abilities on a function-by-function
7          basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R.
       404.1545 and 416.945.  Only after that may RFC be expressed in terms of the
8          exertional levels of work, sedentary, light, medium, heavy, and very heavy.

9   SSR 96-8p.

10          The ALJ found that Plaintiff had a RFC for sedentary work.  Tr. 371.  Specifically, the

11  ALJ determined that Plaintiff could lift and carry ten pounds occasionally and less than ten

12  pounds frequently.  *Id.*  Also, Plaintiff could stand and/or walk at least two hours, and sit for

13  eight hours, in an eight hour day.  *Id.*  According to the ALJ, Plaintiff could occasionally kneel,

14  crouch, stoop, but should avoid climbing, ramps, ladders, ropes, scaffolds, balancing, and

15  crawling.  *Id.*  Furthermore, Plaintiff's medications would not impair his ability to remain

16  reasonably attentive and responsive while satisfactorily carrying out normal work assignments.

17  *Id.*  In reaching his conclusions, the ALJ relied upon the testimony of Dr.'s Craig and Stier.  The

18  ALJ then used that testimony to conclude that the Plaintiff was not disabled and had a RFC for

19  sedentary work.

20          The Court rejects the ALJ's determination that the Plaintiff had an RFC for sedentary

21  work as inconsistent with the treatment record.  In October of 1997, Dr. Vaughan wrote in a

22  medical clearance note that Plaintiff was unable to work because of diabetic sequelae, namely

23  adverse insulin reactions and near syncope/syncope.  Tr. 268.  In January of 1998, Dr. Rapport

24  stated that Plaintiff was severely limited, unable to lift at least two pounds and unable to walk

25

26  REPORT AND RECOMMENDATION
    PAGE - 12

and/or stand.  Tr. 241.  In 2004, after reviewing Plaintiff's treatment records, Dr. Vaughan stated that Plaintiff was totally disabled for work, including sedentary employment prior to January of 1998.  Tr. 245.

For the aforementioned reasons and based upon evidence of the treatment record as a whole, the Court holds that substantial evidence demonstrates that the Plaintiff was totally disabled for work, including sedentary employment because of his diabetes and sequelae thereof. Furthermore, the ALJ has failed to provide clear and convincing reasons for rejecting substantial medical evidence, namely Dr. Vaughan's opinion on the ultimate issue of disability.  In so finding, the opinions of the vocational expert, Tom L. Moreland (Tr. 54) shall not be considered.

## VIII.  CONCLUSION

The Commissioner's determination to deny Plaintiff disability insurance benefits is not supported by substantial evidence and is not free of legal error.  The Defendant has not applied the correct legal standards in weighing evidence in this case.  Based on the record evidence, the undersigned recommends that the Commissioner's decision be REVERSED and REMANDED for payment of benefits.  A proposed Order accompanies this Report and Recommendation.

DATED this 17th day of January, 2007.


MONICA J. BENTON
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 13